# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

DIALLO C. DAVIDSON,      )
                               )
       Petitioner,       )
                               )
                               )     No. 4:11CV79 NCC
                               )
MICHAEL BOWERSOX,[1]    )
                               )
       Respondent,     )

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2]  After reviewing the case, the Court has determined that Petitioner is not entitled to relief.  As a result, the petition will be dismissed.

### Background

Petitioner was charged with one count of first-degree murder, two counts of first-degree assault, and three counts of armed criminal action.  Resp't Ex. C at 12-13 (Legal File, Information).  A jury convicted Petitioner on all six counts.  Id. at 66-71 (Jury Verdict).  The trial court sentenced Petitioner to life without parole,

---

[1]  Petitioner is incarcerated at the South Central Correctional Center ("SCCC").  When petitioner filed this action, Jeff Norman was the Warden at SCCC.  Michael Bowersox is the current Warden of the facility, and Bowersox is the proper Respondent under Rule 2(a) of the Rules Governing § 2254 cases.

[2]  The parties consented to the jurisdiction of the undersigned magistrate judge to resolve this proceeding.  28 U.S.C. § 636(c).

three consecutive life sentences, and fifteen and ten years concurrent with the life sentences. Id. at 90-94 (Sentence and Judgment).

The Missouri Court of Appeals set forth the background of the case as follows:

> On January 5, 2004, [Petitioner] purchased a single pill of what he believed to be synthetic heroin. [Petitioner] tested the pill but determined that it was not actually synthetic heroin. [Petitioner] then pursued the seller and his two companions in a high-speed car chase through the City of St. Louis. [Petitioner's] girlfriend, Hollie Pruitt, and their son were also in the car with [Petitioner]. [Petitioner] eventually cornered the three men's car on a dead-end street. [Petitioner] pulled a gun from his waistband and shot repeatedly at the car. The seller of the pill died from a single gunshot wound to his cervical spine. [Petitioner] also wounded the driver, Kevin Page. The third man fled the scene apparently unwounded.
>
> . . .
>
> Before trial, [Petitioner's] trial counsel filed a motion in limine to prevent the State from referencing [Petitioner's] arrest for the murders of two other men in connection with Page's identification of [Petitioner] as the shooter. Trial counsel expected Page to testify that he recognized [Petitioner] during the shooting because [Petitioner] had been pictured in a newspaper with the two murdered men. Page remembered the photographs because he had been friends with the two victims. The photographs had appeared in a 2002 edition of the EVENING WHIRL, a St. Louis "Crime Fighting Publication." The trial court ruled that Page could refer to the photographs but not to the underlying murders.
>
> During jury selection, the trial court discovered that the sheriff had placed leg shackles on [Petitioner] because of security concerns without the trial court's prior approval. The restraints consisted of a leg brace underneath [Petitioner's] clothing and leg shackles with a connecting chain on the outside of [Petitioner's] clothing. The trial

court determined that the shackles were not visible to the jury and permitted the shackles to remain on [Petitioner]. Trial counsel did not object to the shackling but moved chairs in front of counsel's table to obscure the jury's view of the shackles.

At trial, the State called seven witnesses including Pruitt and Page.

Davidson v. Missouri, 308 S.W.3d 311, 314-15 (Mo. Ct. App. 2010).

At trial and over [Petitioner's] objection, the State introduced portions of letters [Petitioner] sent to Pruitt after the shootings and adduced testimony from Pruitt as to her interpretation of the letters. Also over [Petitioner's] objection, the State introduced the report of the murder victim's autopsy and adduced testimony from a medical examiner. The medical examiner who testified did not perform the victim's autopsy or prepare the autopsy report. The medical examiner who actually conducted the autopsy and prepared the report did not testify because she was "out-of-town on vacation or something."

. . .

Pruitt read portions of the first letter into evidence as follows.

> All I desire is to be free from all this shit. Hollie, I really want you to know I ain't going to do nothing to you. I'll kick your ass, if anything. I wouldn't hit you in your face. I'll really kick your ass 'cause these games got to stop. I'm so tired of this bullshit.
>
> . . .
>
> I'll move away from this place, if that would make you comfortable, safe and secure. I promise you, ain't no hard feelings. All I'm asking is for another chance now more than ever. Like I wrote before, please showa playa love urgently.
>
> . . .

> Damn, Hollie, I'm really serious and I hope you really truly answer my request. I'm fed up and ready to change. The hell with getting high and a lot of other shit.
>
> . . .
>
> Hollie, baby girl, I know a lot of things, but should I expose those things? I'm a 'G' deep down inside and I'll never change that. I got a son and daughter to raise and things I sincerely desire to do, so let me gone head and bounce back. Straight up.

Pruitt testified that she took these statements to mean that [Petitioner] was "just basically trying to talk, to encourage me not to come to Court, or whatever." Pruitt also read from [Petitioner's] second letter.

> I'm really asking, is there any possibility of me gaining freedom again. I understand you saying this and that, but my truest thoughts are to get there and provide for my kids straight up. Nevertheless, Ms. Pruitt, I'm serious and somehow I hope you find it in your heart and soul to forgive and forget everything.

Pruitt then testified how she interpreted the statements in the second letter.

> [Prosecutor]. What did you take that to mean?
>
> [Pruitt]. As far as what had happened and the stuff that I have to go through as far as, you know, coming here and being a witness and so forth and so on, being a witness to what happened.

<u>Missouri v. Davidson</u>, 242 S.W.3d 409, 412-13 (Mo. Ct. App. 2007).

During cross-examination, [Petitioner's] trial counsel attempted to impeach Pruitt's testimony by suggesting the State and police coerced Pruitt's testimony. To that end, trial counsel introduced prior inconsistent statements from Pruitt's pre-trial deposition. Trial

counsel also cross-examined Pruitt regarding inconsistent statements made during the police investigation.  Trial counsel did not confront Pruitt with the letters she wrote to [Petitioner] while [Petitioner] was in jail.  Trial counsel also chose not to use jail records demonstrating, contrary to Pruitt's pre-trial deposition testimony, that she visited [Petitioner] in jail after his arrest.

Page testified that during the car chase and shooting he recognized [Petitioner] from a picture he had seen in the EVENING WHIRL several years previously that showed [Petitioner] with two of Page's friends. During Page's testimony, the State showed him the newspaper.  Page identified each of the people in the picture, including [Petitioner]. Over trial counsel's objection, the State moved for admission of the newspaper, and the trial court admitted it.

After the State rested and [Petitioner] called his only witness, the trial court examined [Petitioner] regarding whether he planned to testify. The trial court told [Petitioner] that it did not intend to interfere in his decision to testify, that the decision was solely [Petitioner's], and that unless the trial court heard from [Petitioner], it assumed that [Petitioner] was not going to testify.  [Petitioner] acknowledged that he understood that the decision was his and that he did not intend to testify.  [Petitioner] did not testify.

Davidson, 308 S.W.3d at 315.

On direct appeal, Petitioner argued that the trial court erred in (1) allowing the letters Petitioner sent to Pruitt to be admitted into evidence and (2) allowing the coroner to testify regarding a testimonial autopsy report he did not prepare.  Resp't Ex. D at 13-15 (Appellant's Br.).

The Missouri Court of Appeals held that the letters were properly admitted because "a witness who personally observed events may testify to his 'matter of

fact' comprehension of what he has seen in a descriptive manner which is actually a conclusion, opinion or inference, if the inference is common and accords with the ordinary experiences of everyday life." Davidson, 242 S.W.3d at 414.

The appellate court found that the trial erred, however, in allowing the coroner to testify regarding an autopsy report that he did not prepare, because the testimony violated the Confrontation Clause. Id. at 416-17. The Court applied the rule set forth in Crawford v. Washington, 541 U.S. 36 (2004), and found that the report was testimonial. Davidson, 242 S.W.3d at 416-17. However, the court found that the admission of the testimony was "harmless beyond a reasonable doubt" under Chapman v. California, 386 U.S. 386 U.S. 18 (1967). As a result, the court affirmed the sentence and conviction.

Petitioner filed a timely motion for postconviction relief under Missouri Court Rule 29.15. Resp't Ex. H at 5-25 (Legal File, Pro Se Mot.). The court appointed counsel, and counsel filed an amended motion, which incorporated the pro se motion. Id. at 30-50 (Legal File, Mot.). The motion court denied relief after holding an evidentiary hearing. Id. at 52-61 (Legal File, Findings of Fact, Conclusions of Law, and J.).

On appeal, Petitioner argued that his counsel was ineffective for (1) failing to object to his being shackled during the trial, (2) failing to impeach Pruitt with

documentary evidence showing her prior inconsistent statements and propensity to lie, (3) failing to object to evidence that Page had seen Petitioner in the EVENING WHIRL, and (4) not permitting Petitioner to testify on his own behalf.  Resp't Ex. J at 19-23 (Appellant's Br.).

The Missouri Court of Appeals applied the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), to Petitioner's claims.  The appellate court denied relief on Petitioner's shackling claim because both defense counsel and the trial court established that the shackles were not visible to the jury.  <u>Davidson</u>, 308 S.W.3d at 317.  The court denied Petitioner's impeachment claim because trial counsel's reason for not using the letters to impeach Pruitt was reasonable trial strategy and Petitioner failed to demonstrate prejudice.  <u>Id.</u> at 317-18.  The court found that counsel was not ineffective for failing to object to Page's identification of Petitioner or the admission of the picture from the EVENING WHIRL because they did not introduce evidence of prior bad acts, as Petitioner had argued.  <u>Id.</u> at 318-19.  And the court found that Petitioner's claim that his trial counsel prevented him from testifying was refuted by the record.  <u>Id.</u> at 320.

The instant petition was timely filed.

## Grounds for Relief

1.  The trial court erred in overruling Petitioner's objection to Pruitt's testimony regarding Petitioner's letters and admitting the letters into evidence.

2.    The trial court erred in allowing the coroner to testify regarding an autopsy report that he did not prepare.

3.    The trial court erred in allowing the sheriff's deputy to shackle him during the trial because the court did not make a finding that he was a threat to courtroom security.

4.    Trial counsel was ineffective for failing to object to his being shackled during the trial.

5.    Trial counsel was ineffective for failing to impeach Pruitt with letters and documentary evidence showing her prior inconsistent statements and her motive to lie.

6.    Trial counsel was ineffective for failing to file a motion to suppress or properly object to the admission of the picture from the EVENING WHIRL or Page's testimony that Petitioner was the shooter.

7.    Trial counsel was ineffective for telling him not to testify on his own behalf.

8.    Trial counsel was ineffective for failing to make a continuing objection to the fact that the trial court did not rule on a motion in limine or hold a hearing for an offer of truth regarding the state's knowing use of perjured testimony.

9.    The prosecutor committed misconduct by failing to produce evidence of Pruitt's out-of-state conviction.[3]

10.   The trial court erred when it denied his motion in limine to prevent Page's testimony or the picture of Petitioner in the EVENING WHIRL.

---

[3] Grounds nine and ten are found in Petitioner's amended petition [ECF No. 29] as amended grounds one and two.

## Procedural Default Standard

To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. Wemark v. Iowa, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (quotation marks omitted). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. Id. at 1021. Claims that have not been fairly presented to the state courts are procedurally defaulted. Id. at 1022 (quoting Gray v. Netherland, 518 U.S. 152, 161-62 (1996)). Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can demonstrate cause and prejudice for the default. Id. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986).

## Merits Standard

"In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions." Lomholt

v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003).  Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 413 (2000).  A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  Id. at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record.  28 U.S.C. §2254(e)(1); Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir. 2004).

**Ineffective Assistance of Counsel Standard**

Federal habeas review of an ineffective assistance of counsel claim is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111 (2009). First, a petitioner must overcome the high bar of Strickland v. Washington, 466 U.S. 668 (1984), by showing that (1) counsel's performance fell below an objective standard of reasonableness; and (2) petitioner was sufficiently prejudiced such that "the result of the proceeding would have been different." Id. at 688, 694. Second, under 28 U.S.C. § 2254, petitioner must show that the state court's adjudication of his ineffective assistance claim was "unreasonable." Harrington v. Richter, —— U.S. ——, 131 S. Ct. 770, 788 (2011). Both the Strickland standard and the standard set forth in § 2254 are highly deferential. Ultimately, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 131 S. Ct. at 788.

**Discussion**

1.    Ground One

In ground one, Petitioner argues that the trial court erred in overruling his objection to Pruitt's testimony regarding the letters and admitting the letters into evidence. He claims that the material in the letters was irrelevant and was taken out of context. He also says that the trial court erred in allowing Pruitt to speculate

on the intended meaning of the letters. Respondent contends that this ground concerns state evidentiary law only and, therefore, it is noncognizable in this proceedings.

Respondent is correct. Whether evidence was admissible under Missouri's evidence rules does not create a federal constitutional issue that is cognizable under the Court's limited jurisdiction. Estelle v. McGuire, 502 U.S. 62, 67 (1991). "In the habeas context, '[r]ules of evidence and trial procedure are usually matters of state law. A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process.'" Bucklew v. Luebbers, 436 F.3d 1010, 1018 (8th Cir. 2006) (quoting Adail v. Wyrick, 711 F.2d 99, 102 (8th Cir. 1983)).

"Courts may admit evidence of threats against government witnesses on the grounds that an effort to intimidate a witness tends to show consciousness of guilt." United States v. Davis, 154 F.3d 772, 780 (8th Cir. 1998); see also United States v. Chauncey, 420 F.3d 864, 875 (8th Cir. 2005) ("Evidence of a defendant's threat against a witness is admissible to show consciousness of guilt."); United States v. Guerrero–Cortez, 110 F.3d 647, 652 (8th Cir. 1997) ("An effort to intimidate a witness tends to show consciousness of guilt."). Thus, because such evidence is relevant, the Missouri Court of Appeals did not contradict federal law

when it denied Petitioner's claim on this ground. As a result, Petitioner is not entitled to relief on ground one of the petition.

2.    Ground Two

In ground two, Petitioner argues that the trial court erred in allowing the coroner to testify regarding an autopsy report that he did not prepare. The Missouri Court of Appeals found that the trial court erred under <u>Crawford</u>, but it also found that the error was harmless beyond a reasonable doubt under <u>Chapman</u>.

Petitioner is not entitled to relief on this ground. First, it is not clearly established under federal law that an autopsy report is testimonial under <u>Crawford</u>. The First Circuit addressed this issue and found that it was unclear whether the Supreme Court would find autopsy reports to be testimonial, given that they could be distinguished from other types of reports found to be testimonial. <u>See</u> <u>Nardi v. Pepe</u>, 662 F.3d 107, 111 (1st Cir. 2011) ("Abstractly, an autopsy report can be distinguished from, or assimilated to, the sworn documents in <u>Melendez–Diaz</u> and <u>Bullcoming</u>,[4] and it is uncertain how the Court would resolve the question."). In the absence of a Supreme Court decision holding these types of reports to be testimonial, Petitioner may not obtain federal habeas relief on this ground.

---

[4] <u>Melendez-Diaz v. Massachusetts</u>, 557 U.S. 305 (2009) (certificates of analysis sworn by analysts at state laboratory testimonial); <u>Bullcoming v. New Mexico</u>, 131 S. Ct. 2705 (2011) (certified blood-alcohol analysis report testimonial).

Second, even if it were obvious that the admission of the report violated clearly established federal law, Petitioner would still not be entitled to relief. The prejudicial impact of a constitutional error in a state-court criminal trial is assessed under the "substantial and injurious effect" standard set forth in Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). This is so regardless of whether the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard of Chapman. Fry v. Piler, 507 U.S. 619, 638 (1993).

The admission of the autopsy report did not have a substantial and injurious effect on the outcome of the trial. Pruitt testified that she saw Petitioner shoot at the car several times. Resp't Ex. B at 166-67 (Tr.). And Page also testified that Petitioner shot at the car several times, hitting him in the abdomen and killing the victim. Id. at 319-23. With this testimony available to the jury, Petitioner cannot show that the autopsy report, which merely described the traumatic injuries to the victim's body, altered the outcome of the trial. Therefore, Petitioner is not entitled to relief on ground two of the petition.

3.    Ground Three

In ground three, Petitioner argues that the trial court erred in allowing the sheriff's deputy to shackle him during the trial because the court did not make a

finding that he was a threat to courtroom security. Petitioner believes that the jury did see the shackles and hear the noise they made. He also claims that he was prevented from aiding the defense because of the shackles. Respondent argues that this claim is procedurally barred because Petitioner did not raise this claim in the state courts.

Respondent is correct. Petitioner did not present this claim to the Missouri Court of Appeals, which is a prerequisite for federal habeas review. Petitioner offers no argument demonstrating cause and prejudice for the default. As a result, Petitioner is not entitled to relief on ground three.

Moreover, this claim fails on the merits. The routine use of "visible shackles" during the guilt phase of a criminal trial is prohibited. <u>Deck v. Missouri</u>, 544 U.S. 622, 625 (2007). Petitioner admitted during his deposition, however, that the jury "couldn't probably see the shackles at the time because they had put the chairs around the table so they couldn't see me." Resp't Ex. I at 7 (Pet'r Dep.). And both the trial court and defense counsel agreed that the jury could not see the shackles. Federal district courts are required to give deference to the factual findings of both the state trial courts and the state appellate courts. <u>E.g.</u>, <u>Sumner v. Mata</u>, 449 U.S. 539, 546-47 (1981). This Court is in no position to question whether the jury could or could not have seen the shackles. So, the finding by the

trial court, defense counsel, and Petitioner that the shackles were not visible stands.

Moreover, "brief and inadvertent exposure of [shackled] defendants to jurors is not

inherently prejudicial; the defendant must bear the burden of affirmatively

demonstrating prejudice." United States v. Robinson, 645 F.2d 616, 617 (8th Cir.

1981). In light of the overwhelming evidence of Petitioner's guilt, Petitioner

cannot demonstrate that being shackled during trial prejudiced him.

4. <u>Ground Four</u>

In ground four, Petitioner argues that trial counsel was ineffective for failing

to object to his being shackled during the trial. This claim fails for the same

reasons as ground three. Petitioner admitted that the jury most likely did not see

the shackles, and he has not demonstrated prejudice. Consequently, Petitioner is

not entitled to relief on ground four of the petition.

5. <u>Ground Five</u>

In ground five, Petitioner argues that trial counsel was ineffective for failing

to impeach Pruitt with letters and documentary evidence showing her prior

inconsistent statements and her motive to lie. Petitioner contends that Pruitt sent a

letter to him in which she stated, "Those motherfuckers are coming to get me to

either be charged or testify." Pet. at 34.[5] Petitioner maintains that this statement

contradicts her testimony at trial that she was not coerced to testify. Respondent

---

[5] The letter is not part of the record.

argues that defense counsel did impeach Pruitt regarding prior inconsistent statements and that trial counsel made a strategic decision not to use the letters as impeachment material.

During the evidentiary hearing on Petitioner's Rule 29.15 motion, trial counsel testified that she had read the letters and did not find anything that might be useful to impeach Pruitt. Resp't Ex. G at 7-8 (Hr'g Tr.). Trial counsel used prior inconsistent statements that Pruitt had made to police detectives and in a deposition to impeach her testimony. Plaintiff initially lied to the police and told them she did not know about the shooting. Resp't Ex. B at 208-09 (Trial Tr.) In her deposition, she stated that she was concerned about being charged for the murder. Id. at 210-11. While on cross-examination, however, counsel elicited that she initially said that she was never worried about being charged. Id. at 209.

The Missouri Court of Appeals found that counsel's decision not to use the letters was reasonable trial strategy and that "trial counsel conducted an extensive cross-examination of Pruitt regarding her prior convictions, prior inconsistent statements, and her motives to lie." Davidson, 308 S.W.3d at 318.

The appellate court's ruling was not contrary to, or an unreasonable application of, clearly established federal law. The court applied the correct legal standard, and it applied it in a reasonable manner. Trial counsel explained her

strategy to the motion court, and she used Pruitt's prior inconsistent statements to impeach her. There is no evidence in the record showing that Pruitt wrote any letter to Petitioner stating that she was coerced into testifying because of statements by police or prosecutors indicating that she would be charged if she did not testify at trial. As a result, Petitioner is not entitled to relief on ground five of the petition.

6.    Ground Six

In ground six, Petitioner argues that trial counsel was ineffective for failing to file a motion to suppress or properly object to the admission of the picture from the EVENING WHIRL or to Page's testimony that Petitioner was the shooter. Petitioner claims that evidence that he had been pictured in the EVENING WHIRL improperly suggested prior criminal activity and bolstered Page's testimony because the EVENING WHIRL is known to report on criminal activity. Petitioner also claims that Page's testimony was tainted by improper police tactics. Respondent counters that this claim is refuted by the record and is without merit.

Before trial, defense counsel filed a motion in limine to suppress any evidence mentioning Petitioner's arrest for the murder of Carl Montgomery or David Harris, the two murder victims shown alongside Petitioner in the EVENING WHIRL. Resp't Ex. C at 38-39. The trial court heard the motion at the conclusion

of voir dire.  Resp't Ex. B at 118-24.  The court ruled that Page could not refer to the alleged murders but that he could testify that he "saw a picture of [Petitioner] in connection with pictures of two of his . . . acquaintances or friends, and that's how he remembers it."  Id. at 122.

During trial, the prosecutor asked Page about the car chase.  Id. at 305.  The prosecutor asked Page if he had ever seen the driver before, and Page responded that he had seen him in the EVENING WHIRL in 2002.  Id.  The prosecutor showed Page a redacted copy of the front page of the EVENING WHIRL showing Petitioner alongside Page's two friends, which was marked as State's Exhibit 65, and Page identified Petitioner and his two friends.  Id. at 305-07.  Defense counsel did not object.  The prosecutor asked for admission of the exhibit into evidence, and defense counsel renewed her objection.  Id. at 308.  The court received the exhibit over counsel's objection.  Id.

To the extent that Petitioner seeks relief on the basis that Page's testimony was tainted by improper police tactics, Petitioner's claim is procedurally barred. Petitioner did not bring such a claim in his Rule 29.15 motion, and the Missouri Court of Appeals found this claim to be defaulted.  Davidson, 308 S.W.3d at 318.

The Missouri Court of Appeals affirmed the denial of relief without an evidentiary hearing on Petitioner's claim that counsel was ineffective for failing to

move to suppress or properly object to the admission of the picture from the EVENING WHIRL or Page's identification testimony, finding that counsel did file a motion to suppress and did object to the admission of the picture at trial. Id. at 319. The court further found that "vague or speculative references to the defendant's involvement in other crimes" are not inadmissible and, therefore, the picture from the EVENING WHIRL was properly admissible. Id. at 318-19. Therefore, counsel was not ineffective for failing to object to the admission of admissible evidence. Id.

Petitioner has not overcome the "doubly deferential" standard necessary to show ineffective assistance of counsel. Petitioner has not shown that counsel was ineffective because he has not shown that the picture or reference to the EVENING WHIRL referenced prior bad acts. Nor has he demonstrated that the Missouri Court of Appeals decision was contrary to, or an unreasonable application of, clearly established federal law. As a result, Petitioner is not entitled to relief on ground six.

7.    Ground Seven

In ground seven, Petitioner claims that trial counsel was ineffective for advising him not to testify on his own behalf because the jury might see his shackles and presume him guilty.

The Missouri Court of Appeals affirmed the denial of relief on this claim because the record conclusively showed that it was Petitioner's decision not to testify:

> After the State rested and [Petitioner] called his only witness, [Petitioner's] trial counsel stated that she believed that [Petitioner] did not want to testify. Before submitting the case to the jury, the trial court questioned [Petitioner] regarding his right to testify:
>
> > THE COURT: Mr. Davidson, it's not my desire to interfere with any decisions you and your lawyer make, but we need to be clear on one thing. You have the right to testify or not to testify, as you alone choose. Do you understand that?
> >
> > THE DEFENDANT: Yes.
> >
> > THE COURT: And so unless I hear something to the contrary from you, I will assume that you and your lawyer are in agreement about whether you testify or not, okay?
> >
> > THE DEFENDANT: (Nodding head affirmatively).
> >
> > THE COURT: Do you understand me?
> >
> > THE DEFENDANT: Yes, I understand.
>
> After the trial court sentenced [Petitioner], it examined [Petitioner] regarding the assistance of his counsel. During this examination, [Petitioner] did not complain about trial counsel's failure to call him as a witness.

<u>Davidson</u>, 308 S.W.3d at 320. The appellate court also found that Petitioner "failed to allege facts sufficient to show a reasonable probability that the outcome of his trial would have been different." <u>Id.</u> at 320-21.

This Court defers to the factual findings of the state courts. There is no indication in the record that Petitioner indicated he wished to testify on his own behalf. This Court agrees with the state appellate court that the record indicates that Petitioner made a decision not to testify. As a result, Petitioner is not entitled to relief on ground seven of the petition.

8.     <u>Ground Eight</u>

Petitioner claims that trial counsel was ineffective for failing to make a continuing objection to the fact that the trial court did not rule on a motion in limine or hold a hearing for an offer of truth of the state's knowing use of perjured testimony. Petitioner maintains that trial counsel knew that Pruitt was committing perjury when she claimed that the last time she talked to Petitioner was on the day of the arrest, January 23, 2004. Petitioner states that counsel knew that Pruitt visited him several times in jail and that the jail logs recorded the visits. Petitioner contends that counsel should have objected during Pruitt's testimony but did not.

Petitioner did not raise this claim in his appeal from the denial of postconviction relief. As a result, this claim is procedurally barred, and Petitioner may not obtain relief on this ground.

Furthermore, this claim is meritless. The motion court denied this claim on the basis that the record was "devoid of any indication of perjury." Resp't Ex. H at 58 (Mot. Ct.'s Findings of Fact and Conclusions of Law). Petitioner's conclusory allegations regarding counsel's knowledge of perjury cannot overcome the motion court's findings or the "doubly deferential" standard necessary to show ineffective assistance of counsel.

9.  Ground Nine (Amended Ground One)

In ground nine, Petitioner argues that the prosecutor committed misconduct by failing to produce evidence of Pruitt's out-of-state convictions for forgery and a probation violation. Petitioner states that he could have used the convictions to impeach her on the stand when she failed to disclose them upon questioning. Petitioner contends that this would have supported his theory that she lied on the stand when she said he was the shooter.

Petitioner pursued this claim in Rule 91 habeas proceedings in the state courts, and his habeas petitions were summarily denied. Resp't Exs. N, Q.

In Brady v. Maryland, 373 U.S. 83 (1963), the Court held that a prosecutor violates the Due Process Clause by withholding exculpatory evidence from a criminal defendant. The elements of a Brady claim that a § 2254 petitioner must demonstrate are: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. See Banks v. Dretke, 540 U.S. 668, 691 (2004). To show prejudice, a petitioner must show a "reasonable probability" of a different result. Id. at 699.

The Court will assume, *arguendo*, that the first two requirements have been met. Respondent maintains that Petitioner has failed to demonstrate prejudice because he has not shown that the outcome of the case would have been different if he had been aware of the Illinois convictions.

The Court agrees. The jury already had reason to discount aspects of Pruitt's testimony, and it chose to find Petitioner guilty anyway. Moreover, Page also identified Petitioner as the shooter. As a result, Petitioner cannot show that the outcome of the case would have been different if the Illinois convictions had been known, and Petitioner is not entitled to relief on ground nine of the Petition.

10. <u>Ground Ten (Amended Ground Two)</u>

In ground ten of the petition, Petitioner raises the argument that the trial court erred when it denied his motion in limine to prevent Page's testimony or the picture of Petitioner in the EVENING WHIRL. Petitioner argues that Page was pressured and coerced by "suggestive tactics used by Detective Harrington" into identifying Petitioner as the shooter. Petitioner claims that Harrington showed Page suggestive lineups and threatened Page with detention. And Petitioner claims that Page was unable to identify him as the shooter for two years after the incident.

Whether a not a motion in limine should be granted to bar certain evidence under Missouri's evidence rules is purely a matter of state law and is not cognizable in these proceedings. Moreover, the ruling cannot give rise to a due process violation because it is an interlocutory ruling subject to reconsideration during trial. <u>E.g.</u>, <u>Wilkerson v. Prelutsky</u>, 943 S.W.2d 643, 646 (Mo. banc 1997). As a result, Petitioner is not entitled to relief on ground ten of the petition.

## Conclusion

For these reasons, Petitioner is not entitled to federal habeas relief. Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right." <u>Khaimov v. Crist</u>, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). Thus, the Court will not issue a certificate of appealability. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docket Nos. 1, 29) is **DISMISSED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue. 28 U.S.C. § 2253.

A separate Judgment will be filed forthwith.

Dated this <u>11th</u> day of <u>March</u>, 2014.


/s/Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE